IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| H2E AMERICAS, LLC, <br><br> Petitioner, <br><br> v. <br><br> RYMARK INC., *et al.*, <br><br> Respondents. | ) <br> ) <br> ) <br> ) Case No. 25-00029-RGA-SRF <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM ORDER

At Wilmington this **1st** day of **April, 2025**, the court having considered the parties' submissions (D.I. 2; D.I. 11; D.I. 15; and D.I. 21) regarding H2E Americas, LLC's ("H2E" or "Petitioner") motion to quash pursuant to Federal Rule of Civil Procedure 45(d)(3) or alternatively, for a protective order under Federal Rule of Civil Procedure 26(c), relating to two subpoenas served by Rymark, Inc., Nicholas Markosian, and Vicky Small, ("Respondents") in connection with a civil action pending in the United States District Court for the District of Utah, *Capana Swiss Advisors AG, et al. v. Rymark Inc., et al.*, Case No. 2:23-CV-00467 (D. Utah) (the "Utah Case"), (D.I. 4, Ex. 1, Ex. 2), HEREBY ORDERS that H2E's motion to quash is **GRANTED**, and its alternative motion for a protective order is **DENIED** as moot, for the reasons set forth below.

**1. Background.** The parties' briefing provides scarce facts about the disputed issues in the Utah Case, so the court relies upon the factual summary in *Capana Swiss Advisors, AG v. Rymark Inc.*, 2025 WL 549357 (E.D. La. Feb. 19, 2025) (the "Louisiana Action"), submitted by H2E as supplemental authority. (D.I. 11) In the Louisiana Action, one of H2E's members, Sarah Simkiss, moved to quash two nearly identical subpoenas for documents and her

deposition. (D.I. 11-1 at 1–2) The court quashed the deposition subpoena as facially invalid as it lacked a physical address for the location of the deposition and provided only a Zoom link. (*Id.* at 9–10) The court denied the motion to quash the subpoena deuces tecum, because it was brought in the wrong forum, holding the proper forum is the District of Utah. (*Id.* at 9)

2. Respondents are the Defendants and Counter-Claimants in the Utah Case. (D.I. 2 at ¶ 1) The underlying dispute in the Utah Case arises out of an alleged international "pump and dump" securities fraud scheme. (D.I. 15-1 at ¶ 1) In the Utah Case, Capana Swiss Advisors AG, AmeriMark Group AG, and AmeriMark Automotive AG ("Utah Plaintiffs"), are Swiss corporations that filed suit against Respondents, alleging that Respondents launched a scheme to transfer ownership of Rymark, (a used car dealership in which Markosian claims an ownership interest) into AmeriMark Automative AG and then AmeriMark Group AG, AmeriMark Automotive's parent, to list it on a foreign stock exchange based on financial materials that contained false statements and misrepresentations. (D.I. 11-1 at 1–2) The Utah Plaintiffs allege that, after AmeriMark Group's share price dropped, Markosian sought to disavow the transaction and assume illegitimate ownership over Rymark. (*Id.* at 2) The Utah case concerns the disputed ownership of 13,000,000 shares in the business Markosian contends were stolen from him. (D.I. 15-1 at ¶ 5) Respondents served subpoenas for documents and depositions on H2E and its members based on discovery disclosures in the Utah Case, purportedly linking H2E to one of the entities involved in the litigation, Philomaxcap AG. (D.I. 15 at 2)

3. **Procedural History.** On December 18, 2024, Respondents served H2E with a subpoenas deuces tecum requesting production of documents as follows:

> 1. All communications between you and any of the following: a. Shaen Bernhardt b. Ashley Miron Leshem c. David Hesterman d. Nicolai Colshorn e. Stefan Kammerlander f. Alexander Coenen g. Martin Fasser Heeg h. Capana Swiss Advisors AG 1. Amerimark Group AG J. Amerimark Automotive Group AG k.

2

Philomaxcap AG 1. Orbital AG m. Philocity Global GmbH n. H2E Americas LLC o. Whitetree Capital p. Erika Zordaki q. Josh McMorrow

2. All documents and communications that refer or relate to AmeriMark Automotive AG, AmeriMark Group AG, 4Service Cloud Tech AG, Rymark, Inc., Nicholas Thayne Markosian, John Kirkland, Vicky Small, Capana Swiss Advisors AG, Capana Swiss Advisors AG, and/or Orbital AG.

3. All documents and communications that refer or relate to any actual or potential transaction between or among any of the following: H2E Americas LLC, Philomaxcap AG, Capana, Amerimark AG, and/or Philocity Global GmbH.

4. Any consideration (whether cash, stock, real property, or otherwise) related to any of the actual potential transactions listed above.

5. Records of all corporate meetings of H2EAmericas LLC.

6. All documents and communications concerning Whitetree Capital.

7. All documents and communications concerning Erika Zorkadi.

8. All documents and communications that refer or relate to any business dealings between you and Orbital AG or Capana Swiss Advisors AG, including but not limited to loans you have received from Orbital AG or Capana Swiss Advisors AG and loans you have provided to Orbital AG or Capana Swiss Advisors AG.

(D.I. 4, Ex. 1 at 8–10)

The subpoena deuces tecum required the production of documents by January 8, 2025. A related subpoena was served for the deposition of a corporate representative of H2E to appear via Zoom on January 23, 2025. (D.I. 4, Ex. 2 at 14–22) The topics of the deposition subpoena were equally as broad as the subpoena deuces tecum, with topic #9 incorporating by reference, all of the documents produced in connection with the subpoena deuces tecum. (*Id.* at 20–21)[1] Both subpoenas were served on H2E's registered agent in Delaware. (D.I. 4, Ex. 1, Ex. 2)

4. On December 18, 2024, H2E's counsel conferred with Respondents' counsel about

---

[1] John Skimkiss has submitted declarations supporting H2E's motion and H2E indicated that John Skimkiss would testify as its corporate representative if required to comply with the deposition subpoena. (D.I. 5 at ¶ 1)

3

the subpoenas served on H2E and begun searching for responsive documents. (D.I. 2 at ¶ 6) Approximately two days later, on or about December 20, 2024, Respondents served virtually identical document and deposition subpoenas upon H2E's members, husband and wife John and Sarah Simkiss. (*Id.* at ¶ 5) On December 26, 2024, H2E's counsel delivered timely written objections to the subpoenas. (*Id.* at ¶ 5) Respondents did not address these objections or engage in narrowing the scope of the subpoenas. On January 3, 2025, H2E's counsel met and conferred again with Respondents' counsel by telephone. (*Id.* at ¶ 8)

5. On January 8, 2025, Respondents' counsel informed H2E's counsel that Respondents would not withdraw any of the six subpoenas but agreed to limit the relevant time frame to "2016 to the present" for document production. (*Id.* at ¶ 9)

6. On January 22, 2025, H2E sought relief in this court to quash the subpoenas or, alternatively, enter a protective order. (D.I. 1) H2E moves to quash the subpoenas on the grounds that there was not sufficient time to comply with both the deposition subpoena and the subpoena deuces tecum. (D.I. 2 at ¶ 11) H2E additionally argues the subpoenas should be quashed because they impose an under burden on H2E. (*Id.* at ¶ 16) H2E alternatively moves for a protective order to protect H2E from annoyance, undue burden, and expense. (*Id.* at ¶ 23) H2E argues in support that the subpoenas seek information that is commercially sensitive, amount to a fishing expedition and were served for an improper purpose. (D.I. 2 at ¶¶ 24–26)

7. On January 29, 2025, the case was referred to the undersigned Magistrate Judge. (D.I. 6) The parties were ordered to meet and confer by February 12, 2025, and if unable to agree on compliance, they were instructed to advise the court. (D.I. 7) Respondents filed their response to H2E's motion on February 25, 2025. (D.I. 15) H2E filed its reply on March 24, 2025. (D.I. 21)

4

8. **Legal Standard.** In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Likewise, "[d]iscovery sought via a subpoena issued pursuant to Rule 45 must fall within the scope of discovery permissible under Rule 26(b)." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Becton, Dickinson & Co.*, No. 14-4318, 2018 WL 627378, at *4 (D.N.J. Jan. 30, 2018) (internal citations omitted). "The district court has discretion whether to quash or modify a subpoena." *Shahin v. Delaware Fed. Credit Union*, 2012 WL 3870327, at *2 (D. Del. Sept. 5, 2012) (citing *Wedgewood Vill. Pharmacy, Inc. v. United States*, 421 F.3d 263, 268 n.5 (3d Cir. 2005); *Connaught Laboratories, Inc. v. SmithKline Beecham P.L.C.*, 7 F. Supp. 2d 477, 480 (D. Del. 1998)).

9. Under Rule 26(c), this Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "[T]he 'good cause' standard in the Rule is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." *Nationwide Prop. & Cas. Ins. Co. v. Greco*, No. 2:17CV1163, 2018 WL 10228390, at *1 (W.D. Pa. Mar. 7, 2018).

10. **Analysis.** It is undisputed that H2E has standing to move to quash the subpoenas. *See* Fed. R. Civ. P. 45(d)(3)(A).

11. **Time Frame for Compliance.** H2E moves to quash the subpoenas because they fail to allow a reasonable time to comply with the subpoenas under Fed. R. Civ. P. 45(d)(3)(A)(iii). (D.I. 2 at ¶ 11) Federal Rule of Civil Procedure 45(d)(3) provides that, "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that," among other deficiencies, "fails to allow a reasonable time to comply." H2E argues that fourteen days is a presumptively reasonable time frame for compliance with a subpoena. *Moore v.*

*Walton*, 2024 WL 4756902, at *1 (E.D. Pa. Nov. 12, 2024) (cleaned up). H2E states that because service took place on December 18, 2024, and document production was demanded by January 8, 2025, H2E was only given thirteen business days to comply. (D.I. 2 at ¶¶ 12–13)

12. H2E argues that given the compressed time frame and overbroad scope of the requests, it did not have enough time for compliance. Fact discovery was scheduled to close in the Utah Case on January 28, 2025. (D.I. 4 at ¶ 9) The subpoenas required production of documents by January 8, 2025, and a remote deposition of H2E's corporate representative to be held via Zoom on January 23, 2025. (D.I. 4, Ex. 1, Ex. 2) On December 26, 2024, H2E served objections to the subpoenas and after meeting and conferring on the scope of discovery, Respondents stated they would not be withdrawing any subpoenas but agreed to a temporal limit from 2016 through the present. (D.I. 2 at ¶ 9) Additionally, H2E was given nine more business days, until January 21, 2025, to produce the documents and provide a corporate representative for deposition by January 28, 2025. Based upon the foregoing chronology, the court finds the time frame for compliance was unreasonable under the particular circumstances of this case.

13. **Undue Burden.** H2E further moves to quash the subpoenas because they are unduly burdensome. (D.I. 2 at ¶ 16) To determine whether a subpoena for production of documents creates an undue burden or expense, courts typically assess the following factors: "1) relevance of the information sought; 2) the party's need for the production; 3) the breadth of the request; 4) the time period covered by the request; 5) the request's particularity; and 6) the burden imposed." *Miller v. Allstate Fire & Cas. Ins. Co.*, No. CIV. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009).

14. H2E argues that relevance has not been established because it is not a party in the Utah Case and has little if any connection to the parties in that case. (D.I. 2 at ¶ 18)

Respondents assert that through discovery they have learned that H2E may have relevant information because H2E "contemplated a transaction" with a Third-Party Defendant in the Utah Case, Philomaxcap AG. (D.I. 15 at 3–4) Respondents cite to a press release dated, August 23, 2024,[2] that reported a potential acquisition between the two companies. (D.I. 15, Ex. 2) Respondents further allege that Philomaxcap AG, has a purported ownership interest in the allegedly stolen shares. (D.I. 21 at 2)

15. Even assuming, *arguendo*, that the information sought is relevant, Respondents do not address any of the other factors within the analysis. Under factor (2), the need for production, Respondents do nothing more than argue H2E should respond to the subpoena duces tecum, regardless of what discovery has already been produced in the Utah Case.

16. Under factor (3), the breadth of the request, H2E argues the subpoenas are overbroad and not limited to the transactions or the shares in issue in the Utah Case. (D.I. 4, Ex. 1 at 8–10) The only limitation on the scope of the subpoenas is a temporal one. Following a meet and confer, Respondents agreed to cabin the "Relevant Period" to nine years, i.e., from "2016 through the present." (D.I. 2 at ¶ 9) Respondents have at no time substantiated why H2E's documents dating back to 2016 would be relevant or proportional.

17. Respondents' argument under factor (5), the request's particularity, also fails because it does not align with the actual language of the subpoenas served upon H2E. The subpoenas seek "all documents and communications" between H2E and a list of different individuals and corporate entities, from 2016 to the present. (D.I. 4, Ex. 1 at 8–10) Contrary to Respondents'

---

[2] H2E erroneously argues that the alleged press release for the transaction occurred on August 24, 2023 (D.I. 21 at 2–3), thus, the subpoenas are untimely because they were served a year and a half after the proposed acquisition. (*Id.*) To the extent H2E is mistaken about the date, the court will not consider its argument on the untimeliness of the subpoenas.

7

arguments, the subpoenas are not limited to Philomaxcap AG, or the shares in issue, but seek information regarding more than two dozen corporate and individual entities without detailing their connection, if any, to the disputed transactions at issue in the Utah Case. (*Id.*)

**18.** The final factor relates to undue burden. The subpoenas served on H2E, a non-party, encompass a nine-year period and are untethered to the claims at issue in the Utah Case. Consequently, they are disproportional to the needs of the case and unduly burdensome. Requests that refer to "all documents" are inherently overbroad unless the "all" refers to a very discrete set of documents. *In re Selman*, 2024 WL 1092025, at *9 (D. Del. Mar. 13, 2024). Respondents have yet to narrow the scope of the subpoenas despite ample opportunity to do so including the opportunity to explain to this court the targeted scope of the production they seek. Respondents' offer, stated in their brief, to meet and confer further regarding the scope of the subpoenas rings hollow. (D.I. 15 at 4)

**19.** Therefore, the court finds that Respondents' subpoenas amount to a fishing expedition for which Respondents have presented no factual support, only conclusory arguments. *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 218 F.R.D. 423, 424 (D. Del. 2003) (quashing subpoena and holding, "[i]t is incumbent upon counsel in the first instance to order discovery demands, particularly against non-parties, in such a way that the burdens of giving evidence are reasonable, under all of the circumstances presented.").

**20.** Finally, fact discovery in Utah Case closed on January 28, 2025. (D.I. 4 at ¶ 9) After filing their subpoenas, the Respondents moved to extend discovery in the Utah Case only with respect to the deposition subpoena and not the subpoena deuces tecum. The motion remains pending. (*Id.*)

**21.** Based upon the foregoing reasons, H2E's motion to quash the subpoena deuces

8

tecum and the deposition subpoena is **GRANTED**. *See* Fed. R. Civ. P. 26(b)(1); *Nat'l Union Fire*, 2018 WL 627378, at *4 ("If a subpoena falls outside the scope of permissible discovery, the Court has authority to quash or modify it upon a timely motion by the party served.") (citing Fed. R. Civ. P. 45(d)(3)).

**22. Protective Order.** H2E argues, alternatively, that good cause exists for a protective order as disclosure would harm their privacy interests and reveal potentially sensitive business communications, based upon the Third Circuit's decision in *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 924 F.3d 662, 671 (3d Cir. 2019). (D.I. 2 at 24–26) In response, Respondents argue that a protective order is already in place in the Utah Case and that H2E could designate documents "Confidential" or "Attorneys' Eyes Only" in accordance with that protective order. (D.I. 15 at 4) Having granted H2E's motion to quash, the court need not reach the alternative motion for protective order, and it is therefore **DENIED** as moot.

**23. Conclusion.** Accordingly, H2E's motion to quash Respondents' subpoenas is **GRANTED** and, H2E's alternative motion for a protective order is **DENIED** as moot.

**24.** This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Memorandum Order. Fed. R. Civ. P. 72(a). The objections and responses to the objections are limited to four (4) pages each.

**25.** The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, www.ded.uscourts.gov.

Sherry R. Fallon
United States Magistrate Judge